# United States District Court

_NORTHERN_ DISTRICT OF _CALIFORNIA_

UNITED STATES OF AMERICA
v.
MALEKA MAY

Venue: SAN FRANCISCO

**CRIMINAL COMPLAINT**

**EDL**

FILED MAY 03 2007 RICHARD W. WIEKING CLERK, U.S. DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

(Name and Address of Defendant)

CASE NUMBER: 3 07 70265

I, the undersigned complainant being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about <u>April 23, 2007 and May 3, 2007</u> in <u>San Francisco County</u>, in the <u>Northern</u> District of <u>California</u> defendant did, knowingly and willfully make material false statement(s) to Customs and Border Protection Officers and Immigration and Customs Enforcement Special Agents in violation of Title <u>18</u> United States Code, Section <u>1001 (Making False Statements to an Agency of the United States)</u>.

I further state that I am a <u>Special Agent for Immigration and Customs Enforcement, Department of Homeland Security</u> and that this complaint is based on the following facts:

**See attached Affidavit in Support of Criminal Complaint**

Maximum Penalties:
Title 18 USC Section 1001:
5 years of imprisonment; $250,000 fine; 3 years supervised release; and $100 special assessment fee.

APPROVED AS TO FORM: _____
Julie A. Arbuckle, AUSA

Continued on the attached sheet and made a part hereof: ☒ Yes  ☐ No

Warrant of Arrest Requested:   ☒ Yes  ☐ No
      Bail Amount: N/A

_____
Signature of Complainant, Brodie Allyn

Sworn to before me and subscribed in my presence,

May 3, 2007                              at   San Francisco, California
Date                                          City and State

**Elizabeth D. Laporte**
**United States Magistrate Judge**
Name & Title of Judicial Officer

_____
Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

1. I, Brodie Allyn, a Special Agent with United States Immigration and Customs Enforcement (ICE) being duly sworn, state as follows:

### INTRODUCTION AND PURPOSE OF AFFIDAVIT

2. I am a Special Agent for Immigration and Customs Enforcement (ICE), Department of Homeland Security, and have been so employed since August of 2003. I am currently assigned to the Office of the Resident Agent in Charge, San Francisco International Airport (SFO). Prior to my employment with ICE, I was employed as a Police Officer with the City of Howell, Michigan for approximately one year. I hold a Bachelor's degree from the University of Michigan, graduated from a certified Police Academy in Michigan, and am an honorably discharged United States Marine. I have received training in investigating violations of federal laws, including but not limited to 18 U.S.C. § 1001 (Making False Statements to an Agency of the United States). In the course of the investigation described herein, I have consulted with other federal, state, and local law enforcement officers.

3. This affidavit is submitted in support of a complaint against Maleka MAY, date of birth March 5, 1974, for a violation of 18 U.S.C. § 1001 – Making False Statement(s) to an Agency of the United States. This affidavit is based in part on personal knowledge, interviews, and reviews of official documents, records, and reports, and does not contain every fact, piece of information or evidence concerning this alleged violation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that a violation of federal law has occurred.

### RELEVANT STATUTE

4. 18 U.S.C. § 1001 provides, in relevant part: "Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully – (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact; (2) makes any materially false, fictitious, or fraudulent statement or representation; or (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry; shall be fined under this title, imprisoned not more than 5 years or,…both."

### FACTS SUPPORTING PROBABLE CAUSE

5. On April 23, 2007, MAY arrived at SFO from Phoenix Airport (PHX) on United Airlines (UA) flight 1651 at approximately 0910 hours. MAY had a reservation for UA flight 857 departing for China at 1330 hours.

6. On April 23, 2007, MAY transited through the San Francisco International Airport en route to China. MAY is married to Kenneth Freeman, who is an ICE Top Ten Fugitive and United States Marshals Service (USMS) Top Fifteen Fugitive wanted on multiple

1

counts of child rape in the first degree, and for manufacturing, possessing, and distributing child pornography. A Report of Investigation from the USMS regarding its interview of MAY on March 29, 2006 reports that MAY told USMS that she had been married to Kenneth Freeman since March 26, 2005, and that she had last seen him on or about March 23, 2006. After Kenneth Freeman was released on a $50,000 bail bond, he became a fugitive on or about March 24, 2006 (approximately one year after he and MAY were married) and has resided primarily in China until he was arrested this week in Hong Kong. Thus, when ICE agents, including your affiant, encountered MAY at the San Francisco International Airport on April 23, 2007 en route to China, they believed that MAY was traveling to China in order to meet Freeman.

7. After MAY arrived at SFO from Phoenix, Customs and Border Protection Officer (CBPO) Philip Siaris, CBPO Chris Kukuchi, ICE Special Agent (SA) Ryan Hirt, and your affiant conducted a border inspection of MAY's checked luggage at approximately 0950 hours prior to its placement on UA flight 857 for China. MAY had two pieces of checked luggage including a large black Sports Authority bag bearing bag tag number 3016UA-080776 under the name MAY, Maleka. Inside this bag were the following:

- Four (4) pairs of men's shoes, sizes 10.5 and 11
- Twelve (12) men's shirts, sizes large and extra large
- Four (4) men's pants, size 36 waist 34 inseam
- Two (2) men's sport coats, size 42 long
- Two (2) packages of men's underwear for a 36 inch waist
- Two (2) belts for a size 38-inch waist
- Three (3) bottles of AXE men's body spray

8. MAY's second piece of checked luggage was a red and black Travel Pro suitcase bearing bag tag number 3016UA-080777 under the name MAY, Maleka. Inside this bag was a wedding anniversary card, which read "For My Husband" on the front. The card was in an unsealed envelope inside an interior flap of the suitcase. Agents and CBPOs re-packed the suitcases and turned them back over to UA personnel at approximately 1030 hours, who later placed them on UA flight 857 for China .

9. At approximately 1255 hours, uniformed CBPOs Siaris and Yang Shen, pursuant to their border search authority, encountered MAY during the boarding process for UA 857 and identified themselves as federal officers. When CBPO Siaris asked the purpose of her trip, MAY stated she was attending a business convention and that she is a contract interpreter for BCR Bearing Company. MAY further stated that she had worked for this company for six (6) years, and that she was staying in Shanghai for seven (7) days and Hong Kong for three (3) days.

10. When CBPO Shen asked where she was staying in Shanghai, MAY stated that she was staying in a hotel. MAY stated that she did not have a reservation, and that she had lived in Shanghai for ten (10) years and that she knew the city very well.

11. MAY stated to the CBP Officers that her family was meeting her in Shanghai.

2

When asked who was coming to meet her, MAY stated that her father, sister, and sister's child were coming to see her in Shanghai. MAY stated that they were coming from XingJiang, China, Chituonggi Road #28, which MAY also wrote in Chinese on CBP form 503.

12. During the inspection, two bottles of prescription medication were found in MAY's possession. The name on both bottles was Thomas Stewart, whom MAY indicated was her sister's husband. CBPO Siaris noticed that the address on the bottle, 6161 N 59th Place, Paradise Valley, [Arizona] was the same as the address on MAY's Arizona Driver's License. CBPO Siaris asked MAY if she lived with Stewart and MAY's sister, or if they lived with her. MAY stated that she lived with them.

13. CBPO Shen then asked MAY if she was married, to which MAY responded she was. CBPO Siaris asked MAY if her husband lived with them also. MAY stated that he did not, and that she and her husband had been separated for two years. CBPO Siaris asked MAY when she had seen her husband last, and MAY responded that she had not seen him or had any contact with him for two years. This statement is inconsistent with what she told the USMS when they interviewed her on March 29, 2006 as described in paragraph 6 above. MAY's travel records also indicate that she was in China for approximately four months from August 9, 2006 to December 3, 2006, during which period Kenneth Freeman was also residing there.

14. During the border encounter, SA Ryan Hirt, CBPO Kendall Kabban, and your affiant conducted a border inspection of MAY's carry on luggage. In MAY's carry on, SA Hirt located a Sony Vaio laptop computer. Agents turned the computer on and observed a picture of MAY as the background desktop image. The reporting agent viewed the items in the computer's "recent documents" folder and observed an image titled "Ken-lateral.jpg". The reporting agent opened this image, which was of a man lifting weights whom your affiant recognized as Freeman. CBPO Kabban also observed an image of a man on MAY's cell phone whom CBPO Kabban also recognized as Freeman.

15. The CBP Officer's encounter with MAY was completed at approximately 1315 hours and MAY immediately boarded UA flight 857 departing from SFO to Pudong Shanghai International Airport, China, (PVG).

16. On April 24, 2007, at approximately 1735 hours, UA flight 857 arrived at Pudong Shanghai International Airport. ICE Senior Special Agent (SSA) Lionel Tarin positively identified MAY based on a description and images of MAY transmitted by your affiant. SSA Tarin observed MAY exit gate three (3) for international arrivals and proceed to the outside curb pick-up area. At the curb, MAY was met by Freeman and an unidentified Chinese male. SSA Tarin identified Freeman based on an image and descriptions provided to him by the ICE Office in Seattle.

17. SSA Tarin observed Freeman greeting MAY by putting his arm around her and kissing her on the cheek. All three subjects moved to a nearby vehicle where the unidentified Chinese male loaded MAY's luggage into the vehicle, and then assumed the driver's position. Freeman and MAY entered the vehicle and sat in the rear passenger seats. The three subjects

then departed in the vehicle, which was a black Volkswagen Santana sedan bearing Shanghai license plate EA X233.

18. On May 3, 2007, MAY returned from China to SFO, and was interviewed by your affiant and Special Agent Ryan Hirt after being read and waiving her Miranda rights. When asked who picked her up at the Pudong Shanghai International Airport on April 24, 2007, MAY stated that she took a cab she picked at random from the airport, and that no one met her at the airport to pick her up. When asked how many bags she checked when she left the country on April 23, 2007, MAY stated she had checked two bags. When asked what was in the two bags, MAY stated her clothes and clothes for her female cousin. When asked if she took any other clothes or gifts for anyone else, she responded "no." When asked about her trip to China from August to December, 2006, MAY responded that she visited her father, her cousin, and many other family members – all of whom were from China.

19. As part of the border inspection of MAY's luggage on May 3, 2007 at SFO, your affiant observed several images saved on a removable computer hard that was in MAY's possession. These images, dated November 2006, depict MAY with Kenneth Freeman, and appear to have been taken during her trip to China from August to December, 2006. On May 3, 2007, your affiant also observed that MAY did not have with her the laptop computer, the cell phone, or the black Sports Authority bag she had in her possession on April 23, 2007, apparently leaving these items in China.

## SUMMARY

20. Based on the aforementioned information, there is probable cause to believe that Maleka MAY knowingly and willfully made material false statements to Customs and Border Protection Officers in violation of 18 U.S.C. § 1001.

Brodie Allyn
Special Agent
Immigration & Customs Enforcement

Sworn to and subscribed before me
on this ____3____ day of May 3, 2007

ELIZABETH D. LAPORTE
United States Magistrate Judge